[No. 15705.   Department Two.   March 23, 1920.]

IDA GREGORY *et al.*, *Appellants*, v. COMMISSIONERS OF KITSAP COUNTY, *Respondents*.[1]

HIGHWAYS (11, 12)—ESTABLISHMENT—PERMANENT HIGHWAYS— AUTHORITY TO OPEN NEW ROAD—STATUTES—CONSTRUCTION.  The per- manent highway act, Rem. Code, §5879-1 *et seq.*, intended only the improvement of existing roads along main lines of travel, and does not authorize the opening of new roads, especially in view of the comprehensive act passed at the same session, Id., § 5623-1, *et seq.*, for the opening and establishing of new roads; and the clause in § 1 of the act defining permanent highways, "or the extension of an existing road of like character," taken in connection with the balance of the act, gives no authority for the opening of new roads.

HIGHWAYS (20, 22).—ESTABLISHMENT—OBJECTIONS—ESTOPPEL— RIGHT TO APPEAL—STATUTES.  The permanent highway act, Rem. Code, § 5879-1, *et seq.*, not authorizing the opening of new roads, and providing no notice, owners need not take any appeal from an order of the county commissioners taken thereunder for the opening of a new road, of which they had no notice, but may directly attack the institution of condemnation proceedings by petitioning for a writ of review.

Appeal from a judgment of the superior court for Kitsap county, French, J., entered August 25, 1919, dismissing a writ of certiorari to review proceedings of county commissioners establishing a permanent highway, after a hearing before the court.  Reversed.

*C. T. Hardinger,* for appellants.

*H. E. Gorman,* for respondents.

TOLMAN, J.—The legislature of 1911 enacted what is known as the "Permanent Highway Law," ch. 35, Laws of 1911, p. 118, § 5879-1 *et seq.*, of Rem. Code, entitled:

"An Act relating to the improvement of public high- ways, providing for the payment of the cost thereof, making appropriations therefor, repealing chapter 150

[1]Reported in 188 Pac. 761.

of the Session Laws of 1907, and declaring an emergency.''

which act became effective by the approval of the governor on March 8th, 1911. As shown by the title, and as clearly appears from the terms of the act itself, this act was intended to provide for the improvement of existing public roads only, and nowhere in the act is there any provision for, or reference to, the opening or laying out of any new road. In § 1 of the act, the term ''permanent highway'' is defined as follows:

''The term 'permanent highway,' when used in this act, shall be construed to mean an improved public road constructed along a main line of travel, either beginning at some trade center or an extension of an existing road of like character beginning at some trade center.''

And in § 6 of the act there is given authority to make such deviations from existing lines of such public roads as shall be deemed advantageous ''to obtain a shorter and more direct route, or to lessen gradients, or to otherwise improve such highway.''

Again, in § 8 of the act (Rem. Code, § 5879-8), it is provided:

''Whenever the board of county commissioners shall find it necessary for the purpose of straightening any permanent highway, lessening the gradients thereof, or otherwise improving the same, to acquire or appropriate lands, real estate or other property, and are unable to agree with the owners thereof, upon the reasonable and fair value of such lands, real estate, or other property, such board is hereby authorized to acquire the same by condemnation proceedings in the manner provided by law . . .''

There is no other provision in the act referred to which can in any manner be construed to give authority

to acquire a right of way for, open, establish or lay out any new road.

At the same session, the legislature also passed Chapter 54, Laws of 1911, p. 305, Rem. Code, § 5623-1 *et seq.*, being entitled:

"An Act relating to the establishment and widening of county roads and to the exercise of eminent domain by counties in condemning lands and other property for county roads, and to secure property containing gravel, stone or other road building materials and rights of way in and to such property and repealing all acts in conflict herewith."

This act provides that county roads shall be laid out and established by order of the county commissioners, and when deemed advisable that a road be established.

"The board of county commissioners shall, at a regular meeting, by unanimous vote, pass a resolution and enter the same on the minutes of the board, which resolution shall describe the terminal points of such proposed road and the width and general course of the same, . . . the resolution shall declare that the laying out and establishing of the road is considered a public necessity, and shall direct the county engineer to make an examination of the proposed route of such road as hereinbefore provided."

Then, after providing for the examination and report by the county engineer and for initiation of like proceedings by a petition of householders, § 7 of the act provides for a hearing on the proposed establishment of the road before the board of county commissioners, and directs the auditor to draw warrants in favor of the owners of the property appropriated for the amount of the award made by the board for the appropriation of such properties, and if not accepted by the property owners, the money so awarded is directed to be deposited in court for the benefit of the owners; and § 8 provides:

"If any award of damages is not accepted at the time of said hearing, it shall be deemed rejected, and the board must then, by order, direct proceedings to procure the right of way to be instituted in the superior court of the county by the county attorney of the county in the manner provided by law for the taking of private property for public use." Rem. Code, § 5623-8.

This act provides that all laws and parts of laws in conflict therewith are repealed, and having no emergency clause, it went into effect ninety days after the adjournment of the session of the legislature of 1911.

The board of county commissioners of Kitsap county, at an adjourned meeting held on the 19th day of February, 1917, passed the following resolution:

"Be it resolved, by the board of county commissioners of Kitsap county, Washington, that there be and is hereby established Permanent Highway No. 1-C as follows:

"Beginning at the westerly terminus of Permanent Highway No. 1-B in Kitsap county, Washington, and extending along the shore of Port Orchard Bay in the most practical route in a westerly direction to connect with road No. 154 of said county where the same strikes Port Orchard Bay; in accordance with the right-of-way and plans for said highway that the county engineer be and he is hereby directed to make a survey and map of said route and report to said board as soon as possible, and that permanent highway funds of said county available for the year 1917, be used to pay said construction work."

And also at an adjourned meeting held on the 19th day of May, 1919, the said board of county commissioners passed the following resolution:

"Be it resolved by the board of county commissioners of Kitsap county, Washington,

"Sec. 1. That the construction of Permanent Highway No. 1-C from a point on the shore line of Port Orchard Bay near the westerly line of the Town of

Port Orchard where said permanent highway as now improved terminates, in a westerly direction on or near the shore line of Port Orchard Bay to connect with State Highway No. 21 known as the Navy Yard Highway be and the same is hereby declared to be a public necessity for the general welfare and benefit of Kitsap county and the people thereof, and that the portion of the tracts and lands of . . . and of . . . to be used as a right of way of said permanent highway No. 1-C according to the survey thereof and according to the maps and plans of the County Engineer reference to which is hereby made for further particulars, are necessary for the construction of said Permanent Highway No. 1-C.

"Sec. 2. That the Prosecuting Attorney be and he is hereby ordered and directed to procure the right-of-way over the lands of the above mentioned reputed owners according to the survey thereof, and for that purpose is hereby directed to institute action in the Superior Court of this County in the manner provided by law in the taking of private property for public use."

The appellants, petitioners below, who are the owners of certain real estate sought to be taken as a right of way for said permanent highway No. 1-C, so far as the record shows, were without knowledge of any of the proceedings before the board of county commissioners hereinbefore referred to, until made defendants in an action brought by the prosecuting attorney of Kitsap county under the resolution quoted above, to condemn their lands. Just when such condemnation suit was commenced or when they were served with process therein does not appear, but on June 19, 1919, they filed their petition in the superior court for Kitsap county, praying for a writ of review directed to the board of county commissioners ordering them to certify to the court a full and complete transcript of their records, minutes and files relating to permanent highway No. 1-C, and requiring them to desist from

further proceedings in the matter until the further order of the court, and praying that on final hearing the proceedings taken by the board with reference to said permanent highway No. 1-C be adjudged to be without jurisdiction, illegal and void, and that the condemnation proceedings be dismissed, and for general relief.

Upon the filing of this petition, a writ of review issued, returnable on the 7th day of August, 1919, and in accordance therewith, the board of county commissioners made and filed its transcript of its minutes with reference to permanent highway No. 1-C, which is a part of the record before us. Upon the hearing, the prosecuting attorney, on behalf of the board of county commissioners, stated in open court that the board was acting or claiming to act under the provisions of the permanent highway act, ch. 35, Laws of 1911, p. 118, and was not acting, nor claiming to act, under ch. 54, Laws of 1911, p. 305, relating to the establishment and widening of county roads; and no showing was made indicating that appellants had been made parties to, or had in any manner received notice of any of the proceedings had before the county commissioners prior to the service of process upon them in the condemnation proceeding.

The court made findings of fact, which are not attacked here, in accordance with the statement made in open court to the effect that by the resolution of February 19, 1917, and subsequent proceedings, it was proposed to establish and open, through the lands of petitioners and others, a new public highway of approximately two miles in length to form a connecting link between existing and established permanent highways, and that there was, at the time, no public highway of any description over and along said proposed route,

and that no other or independent proceedings have been had to establish a highway over and along such route, and,

"The court finds that all of the proceedings of the said board of county commissioners of Kitsap county, in relation to the establishment of said permanent highway No. 1-C, were regular and in conformity with the provisions of chapter 35, 1911 Session Laws of the state of Washington, and that said permanent highway No. 1-C is a duly and regularly established highway,"

following which the court entered its judgment quashing the writ of review, dismissing the petition, and awarding costs against the petitioners; from which judgment this appeal is prosecuted.

The principal question here presented for our determination is whether or not under the permanent highway act, a board of county commissioners may proceed to acquire a right of way for, and open, establish and lay out a new highway or public road. From what has heretofore been said with reference to the terms of the act, it is apparent that no such power is expressed in the title, and if it is to be found in the act at all it is to be found only in the definition contained in § 1, defining the term "permanent highway" as meaning an improved public road constructed along a main line of travel either beginning at some trade center or an extension of an existing road of like character beginning at some trade center. Reading the act as a whole, and taking into consideration that the legislature, at the same session, passed a comprehensive act for the opening and establishing of new roads, it seems to be clear and plain that the legislature, by the permanent highway act, intended to cover only the subject of permanent improvements upon public roads already established; and the words in § 1 of the act relating to the extension of an existing road of like

character, were used for the purpose of requiring permanent improvements to begin at some trade center and to be extended continuously therefrom, so that the permanent highway as completed should be continuous and of the greatest possible service to those who might use it.   There is nothing in the language, ''or the extension of an existing road of like character,'' when taken in connection with the remainder of the act, which gives any authority to open or establish a new road. The subsequent sections of the statute relating to the taking of lands necessary for deviations from existing lines to make a shorter or more direct route, lessen the gradients, etc., indicate very clearly that the legislature in this act had in mind only the improvement of existing roads along a main line of travel, and that the deviations and changes referred to are to be made solely for the purpose of the improvement of such existing public roads along a main line of travel, and cannot by any reasonable construction be held to authorize the acquiring of a right of way for the establishment of an entirely new road, although such new road may connect with, or even be an extension of, a theretofore existing road.   It is a well known fact that all roads connect with other roads, and would be useless without such connection at one end at least, and if this act were held to apply to any new road connecting with, and therefore an extension of, a previously existing road, there would be no limit to the power of the county commissioners under it, except the county lines.

To uphold respondent's construction of the language of this act would be to read into it a subject not in anywise expressed or referred to in the title, and cause it to offend against section 19, of article II, of the constitution.

Each act referred to herein is complete in itself; each covers a separate and independent subject, and of course the repealing clause contained in the last enacted in nowise affects the first.

It is contended, however, on behalf of respondent that this proceeding is barred by the statute of limitations, and that, if appellants were entitled to any relief, they should have appealed from the order of the board of county commissioners of February 19, 1917, within the time provided by law for such appeals. Had the proceedings been taken under chapter 54, of the Laws of 1911, which provides for a hearing before the board of county commissioners upon the question of the establishment of the road, and petitioners had been given notice of such hearing, or had participated therein, then they would have had a right of appeal, and not having exercised it, might have been refused other relief; but, by the permanent highway act, under which the board admittedly was proceeding in this instance, there is no provision for any notice to property owners or hearing before the board of county commissioners, and the lack of any such notice or hearing is further evidence that the permanent highway act was not intended to give authority to open and establish new roads. Having had no notice of the proceeding and no right to appear and be heard before the board of county commissioners with reference to the opening and establishing of such new road, petitioners had no right of appeal; and indeed, so far as the record before us shows, had no knowledge whatsoever of the proceedings. *Morath v. Gorham*, 11 Wash. 577, 40 Pac. 129; *Lawry v. Board of Commissioners, Snohomish County*, 12 Wash. 446, 41 Pac. 190. Whether or not they might have questioned these proceedings in the condemnation suit is not a question we are now called upon to decide; but, in any event, it

would seem to be the better practice to raise their objections by a direct attack at the earliest possible moment, as was done in this case by petitioning for a writ of review.

Since we have found that the permanent highway act gives authority only for the improvement of public roads already existing, and that proceedings for acquiring a right of way for and the opening and establishing of new roads must be taken under chapter 54, Laws of 1911, and since admittedly the provisions of this latter act have not been complied with in the proceedings now under review, and those provisions recognize rights which cannot be ignored, it follows that these proceedings are void as to appellants, and the judgment appealed from must be reversed, and the cause remanded with instructions to the trial court to proceed in accordance with the views herein expressed.

Reversed and remanded.

HOLCOMB, C. J., BRIDGES, FULLERTON, and MOUNT, JJ., concur.